**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 1, 2005
Decided June 15, 2005

**Before**

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 04-3179

| | |
|---|---|
| GETU HAILU KEBE and GEDAM TESFAYE AYELE, | Petition for Review of an Order of the Board of Immigration Appeals |
| *Petitioners,* | |
| | Nos. A79 290 810, A79 290 811 |
| *v.* | |
| ALBERTO R. GONZALES, | |
| *Respondent.* | |

**O R D E R**

Ethiopian citizens Getu Kebe and wife Gedam Ayele illegally entered the United States in September 2000 and applied for asylum. In November 2002 an immigration judge denied their application. Kebe and Ayele appealed to the Board of Immigration Appeals, which affirmed the IJ's decision without opinion. Instead of petitioning for review to this court, they filed with the BIA a motion to reconsider that highlights perceived errors by the IJ and cites *Niam v. Ashcroft*, 354 F.3d 652 (7th Cir. 2004), a case decided while their appeal was pending. The BIA denied the motion, reasoning that it was untimely and, in any event, failed to identify any factual or legal errors in the BIA's affirmance. Kebe petitioned for review of the BIA's denial of their motion for reconsideration. We deny the petition.

BACKGROUND

Kebe and Ayele entered the United States without documentation. Removability was established, and they applied for asylum. Ayele's application is derivative of her husband's. Kebe is a 35-year-old man of Oromo ethnicity, and he and Ayele have two children, both born in the United States. Kebe claimed that if he was returned to Ethiopia, he would be persecuted because of his ties to the Oromo Liberation Front (OLF) and his Oromo ethnicity.

In 1977, Mengistu Halle Mirium orchestrated an attack that killed thousands of government opponents, and the Tigrayan People's Liberation Front launched a war for regional autonomy. In 1991, the Ethiopian People's Revolutionary Democratic Front (EPRDF) captured Addis Ababa, forcing Mengistu to leave the country. The EPRDF, the OLF, and others established a transitional government, but the OLF withdrew in 1992. In 1994, Ethiopia was divided into ethnically-based regions, and in 1995 Negasso Gidada (an Oromo) became president and Meles Zenawi became prime minister.

Kebe testified at the asylum hearing that he fears returning to Ethiopia for two reasons: (1) he believes he will be persecuted for his father's role as a colonel in the former Mengistu regime; and (2) he was involved with the OLF as a supporter since 1995 and a member since 1996. According to the State Department's 1997 county report on Ethiopia, the OLF is an organization whose "primary interest appears to be getting a share of political power, especially in the Oromo regional state." As a businessman Kebe frequently traveled into the countryside of Ethiopia. During these trips, he was able to talk with the OLF members and convey messages from his hometown of Addis Ababa, the capital of Ethiopia.

Kebe testified about two encounters with government authorities before he left Ethiopia. The first occurred in December 1998 when he was arrested and questioned regarding his association with the OLF. During the interrogation, Kebe denied being a member or supporter of the OLF. Kebe was questioned for 24 hours but then released with a warning not to tell anyone about the episode. He was also instructed to remain in Addis Ababa and report to the police station each week. Kebe complied for eight months but then stopped reporting to the police station because the directive was interfering with his business and causing him to lose profits.

Kebe's second encounter occurred in December 1999 when authorities arrested him at his office and imprisoned him. For two months, he was questioned about supporting the OLF and his reasons for ending his weekly visits. He was also beaten repeatedly with rubber truncheons and when he screamed, the police stuffed socks in his mouth. When he finally was released, the police ordered him to report to the station every three days. Kebe did so while planning his escape.

The IJ found Kebe credible but concluded that he did not suffer past persecution or have a well-founded fear of future persecution. Regarding past persecution, the IJ reasoned that the evidence left unclear whether the "sole basis" for Kebe's second arrest was his alleged OLF ties or his disregard of the directive to report to the police weekly. The IJ concluded, without further explanation, that he was most likely detained for violating the reporting requirements and travel restrictions, which in the IJ's view would have constituted "detention related to prosecution" rather than persecution. And, the IJ added, if Kebe was arrested and detained because of his ties to the OLF—which the IJ characterized as a militant group seeking a violent overthrow of the government—that would not help his case because "mistreatment or investigation by a government does not establish eligibility for asylum where the purpose of the mistreatment or the investigation was to obtain information about militants who sought the violent overthrow of the government rather than to punish the individual because of the person's political opinion."

The IJ also concluded that Kebe did not have a well-founded fear of future persecution. The IJ agreed with Kebe that the record contained "evidence of significant turmoil in Ethiopia" but noted that the Ethiopian government's efforts "to learn about the OLF activities" would not constitute persecution given the group's goal of a violent overthrow of the current government. The IJ also reasoned that since the leadership change in 1995, the government had been more open to political groups that, unlike the OLF, have renounced violence. Even though the government had jailed OLF members, most were released after renouncing violence.

Kebe appealed the IJ's decision to the BIA. As far as the record discloses, counsel filed a notice of appeal but never submitted a brief to the BIA. The BIA affirmed without opinion. Kebe did not petition for review. Instead he filed a fourteen-page, single-spaced "motion for reconsideration" that addresses the IJ's decision. Its only reference to matters that might have been overlooked by the BIA is a citation to *Niam*.

## ANALYSIS

We review the BIA's denial of a motion for reconsideration for abuse of discretion. *Laboski v. Ashcroft*, 387 F.3d 628, 631 (7th Cir. 2004). Review is limited to "'whether the discretion was actually exercised and whether it was exercised in an arbitrary or capricious manner.'" *Id.* (quoting *Nwaokolo v. INS*, 314 F.3d 303, 307 (7th Cir. 2002)). That question is answered by looking to the BIA's stated reasons for denying reconsideration, not by assessing its earlier opinion affirming the decision of the IJ. *See id.* at 632.

Timeliness

The government asserts that the BIA properly denied Kebe's motion for reconsideration because it was untimely. The BIA, in denying the motion, stated that Kebe had until April 19, 2004—thirty days from its March 19 order affirming the IJ—to file for reconsideration, but that the "record reflects . . . that the Board did not receive the motion until April 20, 2004." Kebe's motion was stamped "received" by the clerk at the BIA on April 20 at 8:41 a.m.

The BIA correctly stated that Kebe had thirty days from its decision to file the motion to reconsider. 8 C.F.R. § 1003.2(b)(2). Kebe counters that his motion to reconsider was timely because the Postal Service attempted delivery on April 19 but, he assumes, no one was available at the BIA to accept delivery of the package. As evidence of an attempted delivery, Kebe includes in his appendix a "Track & Confirm" email obtained from the Postal Service in August 2004 verifying that the last shipment activity for a package with tracking number ER544236180US was a "Notice Left" at a location in Falls Church, Virginia, on April 19, 2004, at 11:52 a.m. The government responds that this email is not included in the administrative record and, therefore, we cannot consider it. The government adds that the email, even if it can be considered, does not link its tracking number to the motion for reconsideration rather than some other article of mail.

The debate about the email is unnecessary. The administrative record includes the "Addressee Copy" of the Express Mail label affixed to the motion to reconsider when Kebe sent it to the BIA. The document, which the BIA apparently stapled to Kebe's motion after opening it, represents that a "delivery attempt" was made to the BIA on April 19 at 11:52 a.m. Although the April 19 entry is noted as an "attempt," it would appear that delivery was actually made on that date since the BIA obviously got the motion to reconsider and an additional space to record the "delivery date" is blank. Most likely the delivery information was recorded on the wrong line, but ultimately it does not matter. What is significant is that the record establishes, at a minimum, that delivery was attempted (if not effected) on April 19 without regard to the email Kebe inserted into his appendix.

Demonstrating Errors of Law and Fact

In denying the motion for reconsideration, the BIA stated alternatively that, "[e]ven if the motion had been timely, it would be denied because the respondents have not demonstrated any error of fact or law in the Board's decision." Kebe contests this conclusion.

In his motion to reconsider, Kebe argued that the IJ had incorrectly applied the standard of proof regarding past and future persecution. Kebe contends that the IJ believed persecution arises only from abuse motivated *solely* by race,

religion, nationality, membership in a social group, or political opinion but argues that this belief is erroneous because the BIA has held an asylum applicant does not have to establish the exact motive for persecution. Kebe also argued that the IJ applied the wrong standard of proof regarding his claim of a well-founded fear of future persecution because the IJ stated that Kebe must prove that he would suffer persecution because of his ties to the OLF. Kebe further contended that the IJ wrongly concluded that, to establish a well-founded fear of future persecution, he was required to prove that he *would* be persecuted, not just that he harbored a genuine and objectively reasonable fear of persecution. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 440 (1987).

The problem for Kebe is that his motion for reconsideration includes nothing that was unavailable to him at the time of his appeal to the BIA; essentially he used his motion for reconsideration to make the arguments he should have made during his appeal to the BIA. Now he is trying to have this court overlook that what is before it is a petition for review of the order denying his motion, not the BIA's order affirming the IJ's decision. After the BIA affirmed the IJ's decision, Kebe should have petitioned this court for review of the BIA's decision, as well as filed the motion for reconsideration with the BIA. Filing a motion to reconsider does not toll the time to seek judicial review of the IJ and BIA's denial of relief. *Ahmed v. Ashcroft*, 388 F.3d 247, 248 (7th Cir. 2004). In short, the IJ's decision is not before this court.

A proper motion for reconsideration asks the IJ to "reexamine its decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked." *Matter of Cerna*, 20 I. & N. Dec. 399, 402 n.2 (BIA 1991) (internal quotation marks and citation omitted). What Kebe should have done was submit his fourteen-page, detailed arguments as part of his original appeal rather than waiting until after he lost. What is evident, though, is that nothing in the motion to reconsider—except the citation to *Niam*—was unavailable to Kebe during the appeal. *See Ahmed*, 388 F.3d at 251.

Apparently recognizing as much, Kebe now argues that *Niam* "provided further additional legal argument" that was unavailable to him when he appealed to the BIA. But simply reading *Niam* shows otherwise. The case does not develop any novel issues of immigration law; *Niam* is merely an opinion that pokes multiple holes in an IJ's reasoning for denying asylum. Kebe cites *Niam* for the proposition that it is irrelevant whether a member of the opposition party is active. But the IJ did not deny Kebe's claim for asylum because he was not an active member of the OLF. The IJ denied asylum on the apparent premise that the Ethiopian government was free to arrest, detain, and mistreat Kebe because he was a member of the OLF, active or not. That premise is sound or unsound without regard to *Niam*. Therefore, Kebe's motion to reconsider failed to present errors of law or fact that were unavailable to him at the time he filed his appeal to the BIA.

## CONCLUSION

Although the IJ's decision is troubling, principally for the reason that the IJ believed that the Ethiopian government was free to arrest, detain, and mistreat members or supporters of the OLF, we may only review the BIA's denial of Kebe's motion for reconsideration. Because Kebe did not present errors of law or fact to the BIA in his motion for reconsideration, we DENY his petition for review.